UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| VAISHAK RADHAKRISHNAN; FNU SUNIL KUMAR; PADMAJA RUDRARAJU; SHRUTI TRIPATHI; SWETHA GALI; VENKATESH IKKURTHI; and DZIANIS ZHURAUSKI,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS (DOC. NO. 22)**<br><br><br>Case No. 2:24-cv-00444<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiffs, foreign national beneficiaries of nonimmigrant H-1B work visas, brought this action against the United States Department of Homeland Security (DHS), claiming the agency unlawfully revoked their nonimmigrant work status.[1]  DHS moved to dismiss the case for lack of subject-matter jurisdiction (alleging Plaintiffs lack standing) and failure to state a claim.[2]  The crux of the issue is whether DHS correctly applied 8 U.S.C. § 1184(g)(3).

The court has subject-matter jurisdiction as Plaintiffs have standing to challenge the H-1B revocations.  However, Plaintiffs fail to state a claim because DHS did not

---

[1] (*See* Am. Compl., Doc. No. 21.)

[2] (Mot. to Dismiss (Mot.), Doc. No. 22.)

misapply the law when revoking the H-1B petitions based on fraud and misrepresentation by Plaintiffs' employers.  Accordingly, DHS's motion to dismiss is granted, and this case is dismissed.[3]

### BACKGROUND

A. Statutory and Regulatory Background

The Immigration and Nationality Act (INA) provides a way for foreign nationals[4] to obtain nonimmigrant work visas to perform specialty occupations in the United States (known as H-1B visas).[5]  For a foreign national to obtain H-1B status, an "importing employer" must file a petition with United States Citizenship and Immigration Services (USCIS).[6]  And any admission is for such time and under such conditions as the Attorney General and the Secretary of Homeland Security prescribe by regulations.[7]

The INA imposes a statutory "cap" on the number of available H-1B visas per year of 65,000, plus 20,000 for individuals with certain advanced educational degrees.[8]

---

[3] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 16.)

[4] This order uses the term "foreign national" in place of the statutory term "alien" used in the INA.

[5] 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1184(c)(1).

[6] *Id.* § 1184(c)(1).

[7] *Id.* § 1184(a)(1).

[8] *Id.* § 1184(g).

Because more than 85,000 applications are submitted each year, regulations provide for an H-1B cap selection process, commonly known as the H-1B lottery.[9]

The lottery process has two parts.  First, a petitioning employer must register on the USCIS website to file a petition on behalf of a foreign national.[10]  As part of the registration, a petitioner-employer must complete an attestation, under penalty of perjury, that it has "not worked with, or agreed to work with, another registrant, petitioner, agent, or other individual or entity to submit a registration to unfairly increase chances of selection for the beneficiary or beneficiaries in this submission."[11]

Second, after the registration period closes, USCIS performs a computer-generated lottery selection.[12]  USCIS then notifies those petitioners whose registrations were selected and sends them filing instructions.[13]  The selected petitioners must then file an H-1B petition with USCIS.[14]  Ultimately, USCIS notifies the petitioner of the

---

[9] 8 C.F.R. § 214.2(h)(8)(iii).

[10] *Id.* § 214.2(h)(8)(iii)(A)(1).

[11] *H-1B Electronic Registration Process*, U.S. Citizenship & Immigr. Servs., (Sept. 15, 2025), https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-1b-specialty-occupations/h-1b-electronic-registration-process [https://perma.cc/KQ6K-UURG].  This attestation on USCIS's website is the same as at the time Plaintiffs' employers submitted the registrations.  The parties refer to the attestation as the "anti-collusion rule," but in this order, it is referred to as the "attestation requirement."

[12] 8 C.F.R. §§ 214.2(h)(8)(iii)(A)(5)(ii), (h)(8)(iii)(A)(6)(ii).

[13] *Id.* § 214.2(h)(8)(iii)(C); *see also id.* § 214.2(h)(8)(iii)(D)(2).

[14] *Id.* § 214.2(h)(2)(i)(A).

approval, denial, intent to revoke, or revocation of an H-1B petition.[15]  Once a petition is approved, the petitioner may employ the beneficiary, and the beneficiary receives a "cap number" making them "cap exempt"—meaning later petitions to extend the beneficiary's H-1B status or to work with another employer are generally not subject to the cap selection process.[16]

The regulations also provide procedures for revoking approved H-1B petitions for cause.  USCIS may issue a notice of intent to revoke to a petitioner if it finds the registration or petition contained fraud or material misrepresentations (a finding the petitioner-employer may rebut).[17]  But if an employer withdraws a petition, revocation is automatic.[18]  When a petition is revoked, so, too, are the visa and cap number—the foreign national loses H-1B status, their cap number is "restored" to the total number of available H-1B visas, and they are again subject to the cap.[19]

B.  Factual Background

In 2022, various employers filed H-1B petitions on behalf of each plaintiff after submitting registrations and being selected in the lottery.[20]  USCIS initially approved the

---

[15] *Id.* §§ 214.2(h)(9)(i), (h)(10)(ii), (h)(11).

[16] 8 U.S.C. § 1184(g)(7); American Competitiveness in the Twenty-first Century Act of 2000 (AC21), Pub. L. No. 106-313, sec. 104(c) and § 105, 114 Stat. 1251 (Oct. 17, 2000).

[17] 8 C.F.R. § 214.2(h)(11)(iii)(A)(2), (h)(11)(iii)(B).

[18] *Id.* § 214.2(h)(11)(ii).

[19] 8 U.S.C. § 1184(g)(3).

[20] (Am. Compl. ¶¶ 120, 135, 151, 165, 181, 196, 210, Doc. No. 21.)

petitions, which authorized Plaintiffs to work beginning October 2022.[21]  But then USCIS

sent each petitioning employer a Notice of Intent to Revoke the petitions.[22]  The notices,

which only the petitioning employers received,[23] claimed the employers "committed

fraud or willful misrepresentation by colluding" with other companies to increase

Plaintiffs' "odds of selection in the H-1B lottery."[24]  The employers for Plaintiffs

Radhakrishnan, Rudraraju, Tripathi, Gali, Ikkurthi, and Zhurauski did not respond to the

notices.[25]  And Plaintiff Kumar's employer withdrew its petition.[26]  USCIS subsequently

revoked the H-1B petitions and cap numbers.[27]

C. <u>Procedural History</u>

In this lawsuit, Plaintiffs assert one count under the Administrative Procedure Act

(APA), 5 U.S.C. § 706.[28]  Specifically, Plaintiffs claim DHS violated the INA § 1184(g)(3)

---

[21] (*Id.* ¶¶ 121, 136, 152, 166, 182, 197, 211.)

[22] (*Id.* ¶¶ 124, 141, 154, 168, 185, 200, 214.)

[23] (*Id.* ¶¶ 127, 140, 155, 174, 188, 199, 217.)

[24] (*Id.* ¶¶ 125–26, 142–43, 156–57, 169–70, 186–87, 201–02, 215–16.)  In the notices, the agency claimed the employers and other companies had registered Plaintiffs in the H-1B lottery.

[25] (*Id.* ¶¶ 128, 158, 171, 189, 203.)

[26] (*Id.* ¶ 144.)

[27] (*Id.* ¶¶ 129, 132, 145, 148, 159, 162, 175, 178, 190, 193, 204, 207, 219, 222.) Plaintiffs' amended complaint also alleges USCIS "investigated and adjudicated" their "admissibility" and found each of them "inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i)." (*Id.* ¶¶ 130–31, 146–47, 160–61, 176–77, 191–92, 205–06, 220–21.)  As noted below, Plaintiffs abandoned these allegations as a basis for their APA claim.

[28] (*Id.* ¶¶ 225–38.)

by revoking their H-1B statuses and cap numbers based on fraud or misrepresentation by the petitioning employers.[29]  Plaintiffs ask the court to declare DHS's interpretation of "fraud or willfully misrepresenting a material fact" in INA § 1182(a)(6)(C)(i) and § 1184(g)(3) contrary to law,[30] and to find the agency's authority to revoke a cap number for fraud limited to instances of knowingly false statements made by the foreign national.[31]  DHS moved to dismiss, arguing the court lacks subject-matter jurisdiction because Plaintiffs lack standing to challenge the revocations, and Plaintiffs fail to state a claim because the revocations were lawful.[32]  Plaintiffs oppose, contending they have standing and sufficiently state their claim because DHS misapplied INA § 1184(g)(3).[33] In reply, DHS claims Plaintiffs misread the law.[34]  The court heard oral argument on August 18, 2025.[35]

---

[29] (*Id.* ¶¶ 225–38.)

[30] Plaintiffs compare § 1184(g)(3) to § 1182(a)(6)(C)(i) in support of their argument that DHS wrongfully interpreted and applied § 1184(g)(3).  But Plaintiffs do not separately argue DHS misapplied § 1182(a)(6)(C)(i).

[31] (Am. Compl. at 34–35, Doc. No. 21.)  Plaintiffs also ask the court to enjoin DHS from enforcing the attestation requirement until it has completed notice-and-comment rulemaking, and to order DHS to provide Plaintiffs notice and an opportunity to respond to the revocations (and to reinstate the cap numbers during the notice-and-response period).  (*Id.*)  But as explained below, Plaintiffs have abandoned their claims and failed to establish standing for these forms of relief.

[32] (Mot., Doc. No. 22.)

[33] (Pls.' Opp'n to Mot. (Opp'n), Doc. No. 25.)

[34] (Def.'s Reply in Supp. of Mot. (Reply), Doc. No. 26.)

[35] (*See* Doc. No. 28.)

## LEGAL STANDARDS

DHS seeks dismissal under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(1) permits dismissal for lack of subject-matter jurisdiction.[36]  A motion to dismiss under Rule 12(b)(1) may mount either a facial or factual attack.[37]  A facial attack looks only to the allegations in the complaint, assumes them to be true, and argues they fail to establish jurisdiction.[38]  A factual attack goes beyond the allegations and adduces evidence to challenge the court's jurisdiction.[39]  When a defendant brings a factual attack, a district court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."[40]

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."[41]  To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[42]  Courts accept well-pleaded

---

[36] Fed. R. Civ. P. 12(b)(1).

[37] *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020); *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012).

[38] *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)).

[39] *Id.*

[40] *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (citation omitted).

[41] Fed. R. Civ. P. 12(b)(6).

[42] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

factual allegations as true and view them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.[43]  But courts need not accept a plaintiff's conclusory allegations as true.[44]  "[A] plaintiff must offer specific factual allegations to support each claim,"[45] and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[46]

## DISCUSSION

DHS challenges the court's subject-matter jurisdiction under Rule 12(b)(1), arguing Plaintiffs lack Article III standing to challenge the H-1B cap number revocations. In the alternative, DHS seeks dismissal under Rule 12(b)(6), arguing Plaintiffs fail to state a claim under the APA.  Plaintiffs oppose both grounds.

The court has subject-matter jurisdiction because Plaintiffs sufficiently allege standing for the loss of their H-1B statuses and cap numbers.  However, because DHS did not misapply the law in revoking the petitions and cap numbers, Plaintiffs fail to state a claim.

A. Subject-Matter Jurisdiction

DHS first contends Plaintiffs lack standing to challenge the H-1B cap number revocations.[47]  Plaintiffs argue they have standing to claim DHS's revocations violated

---

[43] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

[44] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[45] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

[46] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

[47] (Mot. 9–15, Doc. No. 22.)

the law because DHS improperly applied the law by relying on fraud by the petitioning employers (instead of fraud by the foreign nationals).[48]  But Plaintiffs fail to allege standing for their other claims—that DHS failed to provide them notice and an opportunity to respond to the revocations, and that USCIS found Plaintiffs inadmissible under INA § 1182(a)(6)(C)(i).[49]  Although Plaintiffs have abandoned these claims by not alleging standing, Plaintiffs have shown they have standing to argue DHS based its cap number revocations on a misreading of the law.[50]

---

[48] (Opp'n 9–19, Doc. No. 25.)

[49] (*See* Am. Compl. ¶¶ 127, 130–31, 140, 146–47, 155, 160–61, 174, 176–77, 188, 191–92, 199, 205–06, 217, 220–21, 230, Doc. No. 21.)  DHS argues these claims are not redressable because notice and an opportunity to respond would be fruitless and USCIS has never found Plaintiffs inadmissible.  (Mot. 13–14, Doc. No. 22.)  Plaintiffs abandoned these claims by failing to respond to these arguments.  *See Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1154, 1168 (D. Utah 2018); *Palmer v. Unified Gov't of Wyandotte Cnty./Kan. City, Kan.*, 72 F. Supp. 2d 1237, 1250–51 (D. Kan. 1999) ("[T]he court deems plaintiff's failure to respond to an argument raised in defendants' papers tantamount to an express abandonment of any such claim.").  As a result, Plaintiffs fail to demonstrate standing for these alleged claims and forms of relief.  *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." (internal quotation marks omitted)).

[50] This is true for all plaintiffs other than Dzianis Zhurauski.  He lacks standing altogether.  According to DHS, Mr. Zhurauski's claims are moot because he now has a new H-1B cap number.  (Mot. 14, Doc. No. 22.)  In their opposition, Plaintiffs did not respond to this argument, but at the hearing, Plaintiffs agreed Mr. Zhurauski's claims are moot.  Accordingly, the motion is granted under Rule 12(b)(1) as to Mr. Zhurauski. *See Prier v. Steed*, 456 F.3d 1209, 1212–13 (10th Cir. 2006).

1.  *Article III Standing*

Article III of the Constitution limits federal court jurisdiction to cases and controversies.[51]  Standing, a core component of the case-and-controversy requirement, contains three elements.[52]  First, the plaintiff must have suffered an injury-in-fact—"'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[53]  Second, the injury must be fairly traceable to the defendant—there must be "a substantial likelihood" the defendant's conduct caused plaintiff's injury, not the independent actions of some third party.[54]  Finally, "it must be likely, not merely speculative, that a favorable judgment will redress the plaintiff's injury."[55]

"Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element."[56]  "The party invoking federal jurisdiction bears the

---

[51] U.S. Const. art. III, § 2; *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013); *Allen v. Wright*, 468 U.S. 737, 750 (1984).

[52] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[53] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).

[54] *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005).

[55] *Id.* at 1154 (citing *Lujan*, 504 U.S. at 561).

[56] *Spokeo*, 578 U.S. at 338 (citation modified).

burden of establishing standing."[57]  "[A] plaintiff must demonstrate standing for each

claim he seeks to press and for each form of relief that is sought."[58]

  *2.  Analysis*

  Plaintiffs have standing to claim DHS unlawfully revoked their H-1B statuses and

cap numbers based on fraud or misrepresentation by the petitioning employers.  First,

Plaintiffs sufficiently allege this is an injury-in-fact fairly traceable to DHS.  DHS does not

contest that the lost H-1B statuses and cap numbers constitute an injury-in-fact.

Instead, the agency argues the injury is not fairly traceable to DHS because it stems

from fraud committed by the petitioning employers; the agency simply followed its

statutory mandate.[59]  Plaintiffs contend their injuries directly resulted from DHS's

improper application of INA § 1184(g)(3) to fraud or misrepresentation by the petitioning

---

[57] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (internal quotation marks and citation omitted)).

[58] *Davis*, 554 U.S. at 734 (internal quotation marks omitted).

[59] (Mot. 10–12, Doc. No. 22.)  DHS facially challenges the amended complaint. Plaintiffs allege DHS based the revocations on USCIS "allegedly" finding the petitioning employers had committed fraud or misrepresentation by colluding with other companies to increase Plaintiffs' odds of selection in the H-1B lottery.  (Am. Compl. ¶¶ 125–26, 142–43, 156–57, 169–70, 186–87, 201–02, 215–16, 230, Doc. No. 21.)  DHS offers evidence that USCIS in fact made those findings.  (Mot. at 5–6 (citing Ex. A to Mot., Decl. of Sharon Orise ¶ 11, Doc. No. 22-1).)  Plaintiffs do not dispute this evidence, nor do they substantively challenge the fraud findings.  Instead, they raise a purely legal challenge—that the revocations were unlawful because they were based on the petitioning employers' conduct, not Plaintiffs' actions.  Given this, the court assumes this fact to be true: the agency based the revocations on USCIS's finding of fraud or misrepresentation by the employers.

employers.[60]  In Plaintiffs' view, the statute only applies to a foreign national's
misconduct.[61]

Plaintiffs' lost H-1B statuses and cap numbers constitute an injury-in-fact fairly
traceable to DHS.  Several district courts have found the same in similar cases.[62]  This
alleged injury is cognizable, concrete, and particularized, because USCIS assigned the
cap numbers to each plaintiff, as beneficiaries of approved H-1B petitions, which
allowed them to assume H-1B status and work in the United States.[63]  And although
DHS based its revocations on the petitioning employers' fraud, Plaintiffs' injury is fairly
traceable to DHS.  But for DHS's determination that INA § 1184(g)(3) applies to
employer misconduct, DHS would not have revoked the statuses and cap numbers.  By
arguing otherwise, DHS effectively argues for a stricter causation standard.[64]

---

[60] (Opp'n 10, 17–18, Doc. No. 25.)

[61] (*Id.*)

[62] *See Potnuru v. U.S. Dep't of Homeland Sec.*, No. CV-23-02423, 2025 U.S. Dist.
LEXIS 38233, at *10–11 (D. Ariz. Mar. 4, 2025) (unpublished); *Sharma v. U.S. Dep't of
Homeland Sec.*, 755 F. Supp. 3d 1220, 1226–27 (N.D. Cal. 2024); *Narambatla v. U.S.
Dep't of Homeland Sec.*, No. 2:23-cv-01275, 2024 U.S. Dist. LEXIS 70344, at *13 (W.D.
Wash. Apr. 17, 2024) (unpublished); *Parcha v. Cuccinelli*, 4:20-CV-015, 2020 U.S. Dist.
LEXIS 22197, at *7–12 (E.D. Tex. Feb. 7, 2020) (unpublished).

[63] *See Spokeo*, 578 U.S. at 339–40 (explaining "concrete" means the injury "must
actually exist" and "particularized" means it "must affect the plaintiff in a personal and
individual way").

[64] *See Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, N.M.*, 993 F.3d 802,
814 (10th Cir. 2021) (explaining a plaintiff is not required "to establish that the defendant
was the proximate cause of its injury" and need only establish at the pleading stage that
the challenged conduct is a "but for" cause of the injury (citations omitted)).

Second, Plaintiffs sufficiently allege redressability.  DHS contends a favorable

ruling by the court is not likely to redress Plaintiffs' injuries because it would not remedy

the underlying employer fraud.[65]  As that fraud remains, DHS argues, the court could

not order USCIS to approve the H-1B petitions or restore the cap numbers—because

doing so would contravene § 1184(g)(3)'s prohibition on petitions procured by fraud or

misrepresentation.[66]  Plaintiffs argue their injury is redressable because courts may

vacate unlawful agency action under the APA, meaning the court could vacate the

revocations if it finds § 1184(g)(3) applies only to fraud or misrepresentation by foreign

nationals.[67]

Plaintiffs' standing does not depend on the merits of their statutory argument.[68]

At the pleading stage, Plaintiffs need only allege injuries "likely [to] be redressed by a

favorable decision."[69]  Plaintiffs allege DHS misapplied the law and, under the APA, a

---

[65] (Mot. 12–14, Doc. No. 22.)

[66] (*Id.* at 13–14.)

[67] (Opp'n 19, Doc. No. 25.)

[68] *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal . . . ."); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case.").

[69] *See Citizens for Const. Integrity v. United States*, 57 F.4th 750, 761 (10th Cir. 2023) (citation omitted) (finding the plaintiff satisfactorily alleged her injuries would be redressed if the court were to hold the challenged statute was unconstitutional).

court may set aside an agency's action if contrary to law.[70]  Because the APA may provide a judicial remedy, Plaintiffs' alleged harm is redressable.

Accordingly, Plaintiffs have sufficiently alleged standing for the loss of their H-1B statuses and cap numbers.  This injury stems from DHS's interpretation that the INA grants the agency power to revoke H-1B petitions when a petitioning employer commits fraud or makes material misrepresentations.  Plaintiffs plausibly allege the revocations would not have occurred had DHS interpreted the INA as Plaintiffs do.  And Plaintiffs' injury would be redressed if the court determines DHS's statutory construction is incorrect.  Therefore, this court has jurisdiction over Plaintiffs' claim that DHS violated the APA.

### B.  Failure to State a Claim

DHS also moves to dismiss for failure to state a claim under Rule 12(b)(6).  The APA authorizes courts to "hold unlawful and set aside" an agency's action "in excess of statutory jurisdiction" or "not in accordance with law."[71]  Whether Plaintiffs successfully state their APA claim depends on the interpretation of § 1184(g)(3).  DHS contends Plaintiffs have not stated a claim because the agency correctly applied § 1184(g)(3) to

---

[70] *See* 5 U.S.C. § 706; *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires.").

[71] 5 U.S.C. § 706(2)(A), (C); *Smith v. Bd. of Governors of Fed. Rsrv. Sys.*, 73 F.4th 815, 820 (10th Cir. 2023).

employer fraud.[72]  Plaintiffs assert the opposite—the agency misapplied § 1184(g)(3) because the statute only authorizes revocation for misconduct by a foreign national.[73]

Under the APA, courts must "decide whether the law means what the agency says."[74]  "Statutory interpretation begins with the words in the statute."[75]  The first step "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."[76]  "If the statute's text is unambiguous,

---

[72] (Mot. 15–17, Doc. No. 22.)  DHS also argues Plaintiffs fail to state a claim that USCIS improperly enforced the attestation requirement without notice-and-comment rulemaking, because the APA's notice-and-comment procedures apply to legislative rules, not interpretative rules like the attestation requirement.  (*Id.* at 18–20.)  It is not entirely clear whether Plaintiffs raised this claim as part of their single APA count, which focuses on DHS's failure to follow INA § 1184(g)(3) (not rulemaking procedures).  (*See* Am. Compl. ¶ 97, Prayer for Relief ¶ 2, Doc. No. 21; *cf. id.* ¶¶ 225–38.)  Nevertheless, courts have agreed with DHS's argument.  *See, e.g., LeadIC Design USA LLC v. U.S. Citizenship & Immigr. Servs.*, 766 F. Supp. 3d 946, 955 (N.D. Cal. 2025) (holding plaintiff failed to state a notice-and-comment rulemaking procedures claim because attestation requirement is interpretive).  And Plaintiffs did not respond to this argument in their opposition, discussing rulemaking and the attestation requirement only briefly as background.  (Opp'n 6–8, Doc. No. 25.)  In other words, Plaintiffs have abandoned this claim.  *See Mitchell*, 355 F. Supp. 3d at 1154.

[73] (Opp'n 19–20, Doc. No. 25.)  Plaintiffs cite *Sakthivel v. Cuccinelli*, No. 3:18-cv-03194, 2019 U.S. Dist. LEXIS 249542, at *36 (D.S.C. Jul. 30, 2019) (unpublished) as support, but the court there found the plaintiffs adequately stated a claim that DHS failed to provide them or their employers notice of the revocations.  The *Sakthivel* plaintiffs, unlike here, did not claim a misapplication of § 1184(g)(3).

[74] *Loper Bright*, 603 U.S. at 392.

[75] *Hasan v. Chase Bank USA, N.A.*, 880 F.3d 1217, 1218 (10th Cir. 2018).

[76] *Peabody Twentymile Mining, LLC v. Sec'y of Lab.*, 931 F.3d 992, 996 (10th Cir. 2019) (quoting *Ceco Concrete Constr., LLC v. Centennial State Carpenters Pension Tr.*, 821 F.3d 1250, 1258 (10th Cir. 2016)).

then its plain meaning controls . . . ."[77]  To ascertain plain meaning, courts "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."[78]

Here, INA § 1184(g)(3) provides:

[Foreign nationals] who are subject to the numerical limitations of paragraph (1) shall be issued visas (or otherwise provided nonimmigrant status) in the order in which petitions are filed for such visas or status.  If [a foreign national] who was issued a visa or otherwise provided nonimmigrant status and counted against the numerical limitations of paragraph (1) is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact and such visa or nonimmigrant status is revoked, then one number shall be restored to the total number of [foreign nationals] who may be issued visas or otherwise provided such status under the numerical limitations of paragraph (1) in the fiscal year in which the petition is revoked, regardless of the fiscal year in which the petition was approved.[79]

The parties present competing interpretations of this provision.  In DHS's view, § 1184(g)(3) authorizes revocation of nonimmigrant H-1B statuses and cap numbers if they were procured by any fraud or material misrepresentations.[80]  DHS notes the provision is not limited to any particular party's conduct and is, instead, designed to prohibit fraud and misconduct in the H-1B process generally.[81]  DHS argues Plaintiffs'

---

[77] *Smith*, 73 F.4th at 820 (quoting *United States v. Broadway*, 1 F.4th 1206, 1211 (10th Cir. 2021)).

[78] *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).

[79] 8 U.S.C. § 1184(g)(3).

[80] (Mot. 15–17, Doc. No. 22.)

[81] (*Id.* at 16.)

interpretation improperly limits § 1184(g)(3)'s scope to permit revocations *only* for a foreign national's misconduct.[82]

Plaintiffs, on the other hand, argue § 1184(g)(3) must only apply to a foreign national's fraud or misrepresentation because it references "visa" and "status," which an employer cannot apply for or receive.[83] Plaintiffs also argue § 1184(g)(3) should be read consistently with INA § 1182(a)(6)(C)(i),[84] which penalizes foreign nationals for fraud or misrepresentation.[85] According to Plaintiffs, DHS's interpretation leads to an absurd result, as it frustrates Congress's intent to retain specialized workers like Plaintiffs and, by enacting sections 104(c) and 105 of the American Competitiveness in the Twenty-first Century Act of 2000 (AC21), Pub. L. No. 106-313, 114 Stat. 1251, Congress intended to fix structural flaws in the INA that forced such workers out of the country.[86]

---

[82] (*Id.*)

[83] (Opp'n 10–11, Doc. No. 25.)

[84] Title 8, section 1182(a)(6)(C)(i) provides: "Any alien who without reasonable cause fails or refuses to attend or remain in attendance at a proceeding to determine the alien's inadmissibility or deportability and who seeks admission to the United States within 5 years of such alien's subsequent departure or removal is inadmissible."

[85] (Opp'n 11–13, Doc. No. 25.)

[86] (*Id.* at 15–17 (citing *Heavenly Hana LLC v. Hotel Union & Hotel Indus. of Haw. Pension Plan*, 891 F.3d 839, 845 (9th Cir. 2018), and arguing AC21 is a remedial statute that should be "liberally construed" to account for Congress's intent to protect and retain specialized nonimmigrant workers like Plaintiffs.) Congress enacted AC21, Pub. L. 106-313, in 2000. Section 104(c) permits H-1B holders to continue to extend their H-1B status until their application for adjustment of status is decided during the immigrant visa process. Section 105, codified at 8 U.S.C. § 1184(n)(1), allows H-1B holders to change employers and maintain their H-1B status.

In reply, DHS argues § 1182(a)(6)(C)(i) is distinct, as it refers directly to the foreign national and renders noncitizens inadmissible for their misconduct, whereas § 1184(g)(3) does neither.[87]  DHS also contends its interpretation is sensible because AC21 did not negate the agency's express authority in § 1184(g)(3) to address fraud in the H-1B process, it simply added protections for H-1B nonimmigrants to seek extensions or change employers under AC21 § 104(c) and § 105.[88]  Finally, DHS argues Plaintiffs' interpretation would gut the agency's ability to address employer fraud.[89]

Section 1184 cannot fairly be read as only applying to a foreign national's fraud or misrepresentation.  Under § 1184(g)(3), USCIS may revoke a foreign national's H-1B status and cap number if the visa or status was issued or provided "by fraud or willfully misrepresenting a material fact[.]"[90]  Nothing in this language limits the scope of the agency's revocation authority to wrongful conduct *by the foreign national* (or any particular party).  Instead, the language broadly conditions revocation authority on a finding of fraud or willful misrepresentation, without regard for who committed the wrongful acts.[91]

---

[87] (Reply 4–5, Doc. No. 26.)

[88] (*Id.* at 5–6.)

[89] (*Id.*)

[90] 8 U.S.C. § 1184(g)(3).

[91] *See Narambatla v. U.S. Dep't of Homeland Sec.*, 770 F. Supp. 3d 1264, 1269 (W.D. Wash. 2025) (concluding the same and rejecting construction that § 1184(g)(3) only

The context and design of § 1184 confirm this interpretation.  Under the statute, the employer submits a visa petition on behalf of the beneficiary.[92]  Because the process rests on the employer, it makes sense for § 1184(g)(3) to encompass fraud or willful misrepresentation by the employer, the foreign national, or both.  The statute seems designed to broadly cover any fraud or misrepresentation in the H-1B process. Several district courts have concluded the same.[93]

Reading § 1184(g)(3) with § 1182(a)(6)(C)(i) does not alter this.  Section 1182(a)(6)(C)(i) states: "Any [foreign national] who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible."[94]  This provision, unlike § 1184(g)(3), refers directly to the foreign national's conduct.  It also renders foreign nationals "inadmissible" if they engage in fraud or misrepresentation in the process.  This consequence is not

---

applies to the foreign national's misconduct); *Manney v. U.S. Dep't of Homeland Sec.*, 735 F. Supp. 3d 590, 600 (E.D. Penn. 2024) (same).

[92] *See* 8 U.S.C. § 1184(c)(1) (requiring the "importing employer" to submit the visa petition on behalf of the beneficiary).

[93] *See*, *e.g.*, *Narambatla*, 770 F. Supp. 3d at 1269 (concluding the same); *Manney*, 735 F. Supp. 3d at 600 (same); *Parcha*, 2020 U.S. Dist. LEXIS 22197, at *26–27 (same). Plaintiffs do not address these cases.  Nor do they cite a case reading § 1184(g)(3) as they do.  Instead, Plaintiffs rely on general concepts of statutory interpretation and cases applying these concepts in other contexts.  (*See*, *e.g.*, Opp'n 11, Doc. No. 25 (citing *Combs v. Jaguar Energy Servs., LLC*, 683 F. App'x 704, 706 (10th Cir. 2017) (unpublished), and noting the court applied the nearest-reasonable-referent canon of interpretation).)

[94] 8 U.S.C. § 1182(a)(6)(C)(i).

equivalent to a revoked cap number under § 1184(g)(3)—under this provision, a foreign national can still seek a new cap number if the employer's petition is revoked for fraud. This undermines Plaintiffs' position that § 1184(g)(3) should be read like § 1182(a)(6)(C)(i).  Moreover, if Congress intended § 1184(g)(3) to apply only to a foreign national's misconduct, it would have said so—like it did in § 1182(a)(6)(C)(i).[95] The fact that Congress did not, indicates § 1184(g)(3) applies to any fraud or misrepresentation.

Finally, Plaintiffs' assertion that interpreting § 1184(g)(3) to include employer fraud frustrates Congress's intent in passing AC21 § 104(c) and § 105 is unpersuasive. To be sure, these provisions allow H-1B nonimmigrants to maintain their H-1B status while pursuing an immigrant visa or changing employers, which suggests Congress's intent to protect and retain specialized nonimmigrant workers.  But, as DHS notes, AC21 did not negate the express authority Congress provided the agency in

---

[95] *See I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation modified)); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").  Two cases cited by Plaintiffs also support this premise.  *See Peck v. United States*, 996 F.3d 224, 231 (4th Cir. 2021) ("The different-terms canon is grounded in the understanding that Congress acts deliberately—'where Congress includes particular language in one section of a statute but omits it in another provision of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.'" (quoting *Cardoza-Fonseca*, 480 U.S. at 432)); *Healthkeepers, Inc., v. Richmond Ambulance Auth.*, 642 F.3d 466, 472 (4th Cir. 2011) ("Weighing the various canons of interpretation and reading the statute for plain meaning, we find that applying different definitions to a single term of art within this one statute would be both cumbersome and illogical.").

§ 1184(g)(3) to address fraud in the H-1B process.  Indeed, accepting Plaintiffs'

interpretation would frustrate congressional intent, as DHS would be unable to fully

address fraud by petitioning employers.[96]  As a result, certain H-1B holders would

unfairly receive AC21's protections by benefitting from fraud.  There is no indication

Congress's intent in passing AC21 was to protect and retain specialized nonimmigrant

workers whose H-1B status was procured by employer fraud.

In sum, § 1184(g)(3) authorizes revocation of a nonimmigrant's H-1B status and

cap number based on any fraud or misrepresentation, including by the petitioning

employer.  Plaintiffs have not shown DHS's application of the statute is contrary to law.

Accordingly, Plaintiffs fail to state a claim that DHS violated the APA by misapplying

the law.

---

[96] At the hearing, DHS's counsel represented that although agency regulations address employer fraud, DHS would be unable to fully remedy the effects of fraud in the process without § 1184(g)(3).

**CONCLUSION**

The motion to dismiss[97] is granted.  Mr. Zhurauski's claims are dismissed as moot pursuant to Rule 12(b)(1).[98]  The remaining plaintiffs' claims are dismissed with prejudice pursuant to Rule 12(b)(6) because they fail to state a claim under the APA.

DATED this 15th day of September, 2025.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[97] (Doc. No. 22.)

[98] *See supra* note 50.